Your Honor, my name is William S. Kaufman Jr. I am counsel for Plaintiff Appellant Amy Wright. You may proceed. Thank you. Reliance Standard unfairly interpreted the medical evidence in this ERISA disability insurance case by basing its decision on irrelevant evidence outside the objective medical evidence of inherently subjective medical conditions and by approaching the medical evidence selectively. The district court begins its statement of the medical evidence in this case by citing 18 medical records proffered by Reliance Standard which predate the disability date. In this sort of case, an insurance policy under the ERISA statute, we begin with an elimination period, in this case 90 days. You can't work. You have to prove you're disabled for a certain period of time. It's called an elimination period. Reliance Standard begins its argument saying she didn't prove she couldn't work for six months before the elimination period and then the court adopts that and starts citing medical records about how she's not disabled for six months before the elimination period begins. It's literally out there like Pluto. Mr. Kaufman, is there any case law from our circuit or any other circuit that says an insurance company cannot consider medical history when reviewing a plan administrator's denial of benefits? There are several cases that say consideration of irrelevant medical evidence is reversible error, because it has nothing to do with what's going on. For example, in Hornland, which came out in 2017, and in Alexandra H., which came out in 2016, and this is basically common law everywhere. In interpreting an ERISA plan's terms, a court first looks to the plan's text, gives them their plain and ordinary meaning. If we have a plan which says you must satisfy an elimination period, the elimination period is 90 days and begins on the first day of total disability, consideration of basically the wrong elimination period six months before you're disabled while you're working to try to prove you can't work makes no sense at all. It's literally impossible to prove you're disabled while you're disabled. Next, she suffers from many disabling conditions, notably dysautonomia, POTS, postural orthostatic tachycardia syndrome. You lay down in bed, you sit up, all of a sudden, your heart races. This is one of her primary disabling conditions. Instead, they're saying you didn't prove you have obstructive sleep apnea, you didn't prove you have cardiomyopathy. She never claimed to be disabled by these conditions, and that's one of their rationale for saying she's not disabled, is that she's not disabled by medical conditions she never claimed to be disabled by. The reliance motion for summary judgment, docket 19, page 19, is arguing that she did not rely on the opinion of any physician who begins on August 7th, 2017. Next, an inference of improper motive may be based on an insurer's failure to fairly interpret medical evidence. This is Potter, this is 2005, this is a seminal ERISA case which says that if an insurance company fails to fairly interpret the medical evidence, the case should be reversed. Also, Mellick, which is another leading ERISA case, says that an ERISA administrator's decision must be based on a complete administrative record that is a product of a fair claim evaluation process. I don't see how a case where the court itself is relying on evidence outside of the relevant period while she's still working can be a fair claim evaluation. The insurance company disregarded our clients treating physicians, like Trovino, who did a positive tilt table test that the insurance company characterizes as a negative tilt table test. In dysautonomia, you lay them down on a tilt table and this causes their heart to race. We have one of the leading POTS experts, Laura Kinsella, in the country, in St. Louis, giving her a positive tilt table test. We have an IME from another Tampa doctor named Pamela Noel. These are on the administrative record. They're cited. You can read them there. I'm not going to bother you with it. And then the insurance company says, we're calling for a treating physician rule because we're citing treating physicians. I've been doing this for 20 years. I was there when Black & Decker v. Nord came out. I understand there is no treating physician rule. I would never say there's a treating physician rule. However, Nord also says, plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. Supreme Court justices are not idiots. They don't say you may not consider a treating physician, and that's in Nord. Also, in Caviani, which came out last year, this honorable court said undue reliance on its own physicians and discounting the claimant's evidence of disability renders an insurer's decision that a claimant is not disabled unreasonable. I mean, it's common sense. You don't get to ignore the treating physicians. We're simply saying that Social Security, which has this regulation saying treating physicians are worth more, does not apply in a RISA litigation. And everybody who does this knows that. Also in Cross, which is 12 years old, undue reliance on its own physicians and discounting the claimant's evidence of disability renders an insurer's decision that a claimant is not disabled unreasonable. All we are calling for in this case is that the treating physicians be dealt with and that we not ignore them. Here we have reliance on an elimination period that would start six months before the last day worked while she's still working, which makes no sense at all, demanding that we prove disability of medical conditions we're not claiming to be disabled by. Their first medical expert adds language that isn't in the policy. She requires a new condition or reproducible evidence not required by the LTD policy, which would exclude material evidence of disability of fibromyalgia, migraines, Epstein-Barr, and other medical conditions which are inherently subjective. One of my leading cases, Creel, was a migraine case. The court said it was arbitrary and capricious to demand objective evidence of inherently subjective conditions. From now till eternity, I cannot provide you with objective medical evidence of migraines. They're based on the claimant's subjective complaints, which the doctor then uses to demonstrate that the client is disabled and prescribes accordingly. For example, they're trying to work on blood flow in the brain now because migraines are caused by restricted arteries and veins, and someday maybe there will be objective medical evidence of migraines, but for the last 50 some odd years, we've been treating migraines because people say, I get flashy lights, I get tremendous pain, I have to lay down. It's what the person says. This is true of a great many disabling medical conditions. Nobody is saying it's wrong for an insurance company to demand objective evidence in itself. It's wrong for an insurance company to demand objective evidence where it cannot be gotten. This is true according to Oliver versus Coca-Cola, which vacated the damages section but is still good law in this circuit, and in Helms, which came out in 2007 as well. Reliance Standard then relied on a new medical expert, Robert C. Martinez, a neurologist, who said she wasn't disabled by dysautonomia without submitting her to a tilt table test, said she was not disabled by migraine headaches because he felt she had a normal neurological and general examination. If I'm a neurologist, you come into my office, I say you have a normal general and neurological examination, how did I conclude you don't have migraines? Migraines depend on what your medical records say, on what your doctors say, and on what you say have nothing to do with the examination because I can't look at you and have any idea what's going on inside the pain in your head. On the waiver of premium case, this is a long-term disability and waiver of premium due to disability for life insurance case, they have a medical expert named Dr. Lee, Tan Fong Lee. He says, well, she has fibro and chronic fatigue, but she was working as an executive and she was always able to push through it. This is another problem. You cannot say that because somebody was able to work with a disabling medical condition in the past, they cannot become disabled by it in the future. Also, that sentence in the letter that they denied her with says, while we acknowledge that Ms. Wright may not be able to return to her previous occupation, this is an own-occupation disability case for long-term disability. Their waiver of premium denial admits what we're arguing about in a long-term disability case, that she's disabled from her own occupation. When I bring that up, they say, oh, yeah, but that statement against interest is not Dr. Lee's. It's not Dr. Lee's. It's Reliance Standards denial of a waiver of premium, which isn't any occupation denial, and they admit what we're arguing about in the long-term disability case. Mr. Kaufman, you've used your time. You've reserved five minutes for rebuttal. I have nothing left to say, Your Honor. I'll wait for rebuttal. Thank you very much for your patience with me. May it please the Court? Yes. Good morning, Your Honors. Joshua Bachrach. I represent the Appellee Reliance Standard. A number of these arguments that are raised simply are not true by counsel. For example, he argues that the district court reached the wrong conclusion because we relied on the wrong medical evidence, but the denial letters from Reliance all refer to the August 7, 2017, as the of the elimination period, and the district court itself recognized, Judge Honeywell said in her decision that Wright, quote, had to prove that she was totally disabled for 90 consecutive days from August 7, 2017. Again, that's the correct period of time. The reason that we cited to some earlier records is just by way of background, and the fact that, yes, it was mentioned that she was seeing new doctors, well, that's doctor shopping. And that is important that if a person doesn't like what their other doctors are saying, and they go to different doctors to get a more favorable opinion, that is something that is relevant. And it's also worth noting, Your Honors, that this argument about relying on irrelevant medical evidence that counsel is making, one, her own doctors refer to her prior treatment records as well, and counsel's not saying that they relied on improper evidence. But also, if you look at the district court's decision on page 15, this argument was made to the district court. The district court was told by Mr. Kaufman that we're relying on the wrong dates, which we weren't, and the district court knew that that argument existed, but still recognized August 7, 2017, as the beginning of the elimination period. And contrary to counsel's argument, the court did not include those records in its analysis. It was only briefly mentioned in about two or three paragraphs in the factual section, never in the court's analysis. Therefore, when counsel argues in his reply brief that reliance does not contest that the district court substantially relied on irrelevant medical evidence in reaching its decision, yes, we do. We do object, and that is just a flat-out wrong statement for counsel to have made. And there are a number of these statements that are made by counsel. For example, saying that we're impugning the credibility of Dr. Trevino by saying that he's not a neurologist. Counsel is the one who said that he was a neurologist. We were simply pointing out Dr. Trevino is an internal medicine doctor, and therefore Dr. Trevino, by the way, did not perform a tilt table test. He performed what's called a poor man's tilt table test, and then, because he knew he was not a specialist, referred the claimant here to a neurologist, and that doctor, referred to by Dr. Trevino, said that she's asymptomatic. Asymptomatic. Now, counsel says, yes, but her heart rate increased during that test. But that doctor stated, and I think it's important to look at that record, it's in the LTD claim file at 1373. That doctor stated that her heart rate went up when she was discussing work issues. It didn't go up as a result of POTS. That is the important information here. Counsel also argued that reliance required objective evidence. We required objective evidence of impairment. No matter what a condition is, courts have all required objective evidence of impairment. And on pages 23 and 24 of the district court decision, numerous cases from this court are cited there for this proposition. We have never, ever argued that she had to provide objective evidence of a diagnosis, as counsel is now claiming. There was another incorrect statement by counsel during his argument, and he made this in his reply brief, that we argued on page 18 of our brief that that she was claiming disability from cardiomyopathy and sleep apnea, which she has never claimed. Well, if you look on page 18 of our brief, cardiomyopathy and sleep apnea don't even appear. In fact, if you look at our entire brief, you will not find the word sleep apnea of the word cardiomyopathy. Sleep apnea is mentioned just once. And that was in the context of her own doctors sending her for tests, all of which came back negative, and all of their examinations. So yes, we referred to the fact that her stress test that her doctor sent her to, her seven-day monitor that her doctor sent her to, all came back negative. And her doctor did send her for a sleep study, which came back negative. So for counsel to flip that onto us is simply wrong. Her own doctors asked for these tests, and again, they do not support the claim here. The district, excuse me, the district court conducted a thorough review of the medical evidence here. And it applied, it actually acknowledged all the arguments that were being made, and applied the law, and found that the evidence overwhelmingly supports the decision to deny the claim. And that's supported here. Again, what is being claimed? It's being claimed that there was dizziness. And yet, again, the POTS testing during the relevant times here was negative. Now, counsel refers to Dr. Kinsella performing a POTS test. That was a year and a half, I believe, after the claimed onset date. And as counsel acknowledges, the elimination period had to be satisfied as 90 days. So this is long after the elimination period, if it is to be believed that this test accurately shows that she has POTS. But there are questions about Dr. Kinsella's opinion, because Dr. Kinsella said that at her worst, she's bedridden. Ms. Wright is bedridden. But Dr. Kinsella then says that she should perform, encouraged her to perform vigorous exercise, up to 40 minutes a day, five to seven How can they then reach the opposite conclusion and say, but she can do vigorous exercise, and I encourage her to do it five to seven days a week. So this is the conflicting evidence that Reliance Standard was facing. And under this court's decisions, in Paramore, in Oliver, and in numerous other cases, this court has recognized that it is for the fiduciary to weigh that evidence. And if there's a reasonable basis, which in this case, there is based solely on her doctor's evidence, then that can't be considered arbitrary and precious. So we didn't just look at what her doctor said, even though it didn't support it. We also had Dr. Park prepare a report, and Dr. Park reviewed the records and said that impairment's not supported. And then there's Dr. Martinez. And counsel claims, states in the reply brief that Reliance only had peer reviews. That's also an incorrect statement. Dr. Martinez did an in-person examination, something that this court encourages. And what Dr. Martinez said was, impairment is not supported. She has full-time capabilities of working based on his examination and his review of the medical records. So there's a lot of support. And I'm at a loss to find a case where there's been so much support for a record where a court has found that it's de novo wrong, let alone arbitrary and capricious. As a matter of fact, the district court said, based on all of the evidence, the decision was not even de novo wrong. And if it's not de novo wrong, clearly it can't be arbitrary and capricious. Now, I'd like to address some of the other points that were made by counsel. Counsel criticized Dr. Park for saying that there was no new and reproducible impairment. Well, the new part isn't part of the policy, and Reliance Standard never based its decision on that. So while the doctor may have said that, that doesn't mean the denial was based on the fact that there was no new condition. So that's irrelevant. And the doctor also said there was no reproducible impairment. Well, that's just another way of saying that there was no objective evidence supporting these claims. And again, this court in numerous decisions that said that there is nothing wrong. In fact, objective evidence is simply another way of saying you need to provide proof because you can't just have a claim based on complaints, subjective complaints, because if you do, everybody's payable. And that can't be the standard, especially under the deferential standard of review that applies here. Counsel also referred to the life waiver of premium statement that Ms. Wright may not be able to return to her prior occupation. May. It didn't say can't. It said may not be able to. And that was in the context of the life claim. Why? Because the life claim has a different definition. You have to look at that letter in context. And it was responding to the arguments made by Mr. Kaufman. And the letter said, well, the Reliance letter said, no, under this life waiver policy, there's a different standard. You have to be unable to perform any activity of work, any type of work to qualify for life waiver premium. And Reliance said, but that's not this. That's this language here. So under this language, while you may not be able to work in your prior occupation, it doesn't matter for the life waiver premium. So this isn't an admission against interest. In fact, this report of Dr. I'm the life waiver premium happened after the decision was closed on the long-term disability claim. It's not part of the record in the long-term disability claim, and it can't be considered in connection with the long-term disability claim. So this is entirely irrelevant. Before I address the additional, I would ask if the court has any questions. If not, I do have some other issues, but I can mention, and I'll do so very quickly. Counsel argued at one point, again, counsel flips arguments that he has made and tries to attack Reliance with it. He argues that Reliance referred on an outdated criteria for fibromyalgia based on trigger points in its arguments. This isn't true. In fact, what happened is discussed on page 26 of the district court's opinion, counsel argued that Reliance should have sought out trigger point evidence. And what we argued in the district court recognized was it's plaintiff's burden to prove disability and to provide evidence, and he wasn't doing so. So now he flips his own argument onto us and says that we rely on an improper standard. That's just false. And the argument, that's just one of the many arguments, as I said, where counsel is stretching what is actually in the record and what has been argued by Reliance. It's distorting it in ways that are impermissible here. So there are other issues. In addition to the dizziness, which has not been established, there was also a claim based on cognitive problems. There are ways to test cognitive issues, and none of those tests were performed here. And every doctor said their psychological or psychiatric evaluations were normal. And every doctor said that the neurological examinations were normal. So she simply did not support her own claim. And as for the claim of fatigue, the same doctor who did the official tilt table test and said it was asymptomatic, Ms. Wright told that doctor that she did not have fatigue and that she did not have difficulty walking, contrary to other arguments that are being made here. I just, in conclusion, again, the district court had a thorough analysis. It did not apply the wrong time period. It applied the correct one as stated in the decision, as far as when the disability claim arose. The district court said that the evidence here, again, was overwhelmingly supporting the denial of benefits. And this is why counsel keeps making arguments that are not supported in the record and attacks on reliance that are unsupported, because the evidence here did not come close to supporting the denial of benefits. So with that, I would ask the court to affirm the decision of the district court. And if there are any questions, I'd be glad to respond to them. Thank you. I think we've got your argument. Thank you, Your Honor. I would begin. I'm sorry. I was just going to, I don't see you until you start speaking. So I was going to prompt you to speak. No, it's perfect. Thank you. I would begin by saying, read the record. Just read the record in response to everything opposing counsel has said. The record speaks for itself on every single thing he said. If he's right, the record will bear him out. If I'm right, the record will bear me out. After that, Dr. Trevino treats dysautonomia in Tampa. If you have dysautonomia, you will not be disturbed by going to see him. Dr. Kinsella is a nationwide expert on dysautonomia. That's why Dr. Trevino referred her to him. That's why. I don't think it speaks ill of Dr. Trevino that he referred her to a nationwide expert. I think that's normal. The waiver of premium decision employs LTD evidence, but Hartford doesn't want to have an admission against interest, which is by definition what that is. When you say, we acknowledge she may be disabled from her own occupation. The reason admission against interest is a hearsay exception is that that is an independent warrant of the likelihood that it is true. If you say I shot him, the likelihood that that is true is greatly enhanced. That's all I'm saying. The fact that you may wish to consider it outside of the administrative record is because it is more likely to be true when they say something like that than if not. If you think it should not be considered, you three have black robes at the 11th circuit level, and I wholeheartedly defer to who you are. I am simply saying it has that hearsay exception quality, and they are considering LTD evidence in the waiver of premium and arguing that things in premium should not be considered with respect to LTD. With respect to not one iota of rebuttal in their brief, read the brief. I made this argument in my initial brief. Their response brief does not say a word about this argument. I hear counsel discussing it in an oral argument, but when you're in the brief, they completely skipped this argument. I would argue that's because there is no rebutting it. The court does indeed begin its discussion of the facts with references to 18 medical records before the elimination period begins. Its decision is based in pertinent part on medical records before the elimination period begins. They do, in fact, rely in pertinent part on medical conditions for which the claimant is not claiming disability. Dr. Park does demand new reproducible evidence, which is adding language to the policy. Dr. Lee does say, well, she was able to work with that before, which is not permitted in disability insurance analysis. You have to look at what she's saying now. I have nothing further to say unless you have any questions. Thank you, Mr. Kaufman. I appreciate you caring so much about your client. I think I don't have any further questions to my colleagues. All right. We'll take the case under advisement.